UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CANDY J. LAWSON,

          Petitioner,                    Case Number: 2:20-CV-12080
                                                 HON. DENISE PAGE HOOD

v.

JEREMY HOWARD,

          Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS*

Michigan state prisoner Candy J. Lawson filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. She challenges her convictions for unlawful imprisonment, Mich. Comp. Laws § 750.349b; first-degree abuse of a vulnerable adult, Mich. Comp. Laws § 750.145n(1), and embezzlement from a vulnerable adult, Mich. Comp. Laws § 750.174a(4)(a). She raises three claims for relief. Respondent argues that two of her claims are procedurally defaulted, one is unexhausted and that all of her claims are meritless. For the reasons stated, the Court denies the petition and denies a certificate of appealability. The Court grants Lawson leave to appeal *in forma pauperis*.

I.   **Background**

Lawson's convictions arise from the imprisonment of her disabled adult sister. The Michigan Court of Appeals summarized the evidence presented at trial as follows:

> After the death of her mother in 2007, defendant took custody of two disabled adults, Dianna and Justin Churchill (hereinafter referred to as "Dianna" and "Justin"), whom her mother had adopted, and transported them to live with her in Kentucky.[1] In 2013, defendant moved to Michigan, and in July 2015, an acquaintance of defendant discovered Dianna locked in a small,[2] dark room in defendant's Michigan home. Dianna was severely malnourished and filthy, weighing 71 pounds, with matted hair and peeling skin. Defendant testified at trial and claimed that Dianna had always been skinny and that she did not mistreat Dianna. Defendant was the "payee" for Dianna's social security benefits during that time; evidence showed that the vast majority of those benefits were withdrawn in cash by ATM shortly after the checks were deposited.
>
> ---
>
> [1] Dianna and Justin were not biological siblings of each other. Authorities later learned that Justin had died in defendant's care in Kentucky in 2009 and had weighed 60 pounds at the time of his death; the cause of death was "protein calorie malnutrition," or more colloquially, starvation.
>
> [2] The space was measured as having a width of 4 feet 3 inches, a depth of 8 feet 2 inches, and a height of 7 feet.

*People v. Lawson*, No. 342213, 2019 WL 2397278, at *1 (Mich. Ct. App. June 6, 2019).

Lawson was convicted by a Shiawassee County Circuit Court jury of

unlawful imprisonment, first-degree abuse of a vulnerable adult, and embezzlement from a vulnerable adult involving $ 1,000 or more but less than $ 20,000. On October 27, 2017, she was sentenced to two concurrent terms of 10 to 15 years for unlawful imprisonment and first-degree abuse of a vulnerable adult, to be served consecutively to a prison term of 40 to 60 months for embezzlement. *Id.*

Lawson filed an appeal of right in the Michigan Court of Appeals, raising these claims: (i) admission of other acts evidence denied her a fair trial; (ii) the prosecutor and trial judge coerced a defense witness not to give testimony on Lawson's behalf; and (iii) several offense variables were incorrectly scored. The Michigan Court of Appeals affirmed her conviction and sentence. *Id.* The Michigan Supreme Court denied leave to appeal. *People v. Lawson*, 505 Mich. 870 (Mich. Nov. 26, 2019).

Lawson then filed this habeas corpus petition. The petition raises these claims:

> I. Petitioner was denied her constitutional right to due process and a fair trial by the introduction of allegations of other acts under MCL 768.27b where the evidence was unduly prejudicial and the probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.
>
> II. Petitioner's due process rights were violated where the trial judge and the prosecutor coerced defense witness Chelsea Petoskey to decline to give testimony on petitioner's behalf by

3

>     suggesting that she would be charged with perjury and lying to a police officer.
>
> III.    Petitioner's due process rights were violated where the trial court erroneously assessed 25 points for offense variable (OV) 3, 50 points for OV 7 and 15 points for OV 10, thereby increasing the minimum sentence guideline range. And her sentences, which further exceeded the guidelines to the maximum terms allowed by law, are disproportionate. Petitioner should be resentenced by a different judge.

## II.    Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v.*

*Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

"AEDPA ... imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

5

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. Discussion

### A. Claim One: Admission of Other Acts Evidence

In her first claim, Lawson challenges the admission of evidence concerning the death of her adopted brother Justin. Justin, like Dianna, suffered from hearing and mental impairments. Lawson cared for Justin after their mother's death and was designated as the payee for Justin's monthly social security benefits. She argues that admission of this unfairly prejudicial evidence violated her due process right to a fair trial.[1]

---

[1] Respondent maintains that Lawson did not exhaust her due process claim in state court. A habeas petitioner's failure to exhaust state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). An unexhausted claim may be adjudicated if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *Harris v. Lafler*, 553 F.3d 1028, 1031-32 (6th Cir. 2009). The Court will address this claim because it is plainly meritless.

The Michigan Court of Appeals held that this evidence was admissible under Mich. Comp. Laws § 768.27b and the Michigan Rules of Evidence:

> Intent to cause "serious physical harm or serious mental harm" is an element of first-degree abuse of a vulnerable adult. MCL 750.145n(1). At trial, defendant argued that Dianna was naturally thin or skinny. However, the fact that another individual under defendant's care had died of starvation tended to rebut any argument that Dianna's death was accidental. *See* MRE 404(b)(1) (providing that similar acts evidence is admissible to prove "absence of mistake"). In addition, the evidence about Justin was relevant to show that defendant had a tendency, in general, to mistreat her vulnerable, adult siblings. Notably, MCL 768.27b allows evidence of character to be used to show action in conformity therewith. *People v. Cameron*, 291 Mich. App. 599, 609; 806 N.W.2d 371 (2011); *see also People v. Mack*, 493 Mich. 1, 2-3; 825 N.W.2d 541 (2012).
>
> Numerous defense witnesses testified about Dianna's tendency to be "skinny" and to vomit. The other-acts evidence was particularly relevant in light of this testimony. Indeed, the prosecutor used the other-acts evidence to rebut the defense implication that Dianna had become so thin naturally and to help show that Dianna had been starved. The Supreme Court has explained that evidence is "probative" if it makes the existence of a consequential fact more probable than it would be without the evidence. *People v. Feezel*, 486 Mich. 184, 197; 783 N.W.2d 67 (2010). Given the proffered defense, the other-acts evidence made the existence of criminal intent much more probable than it would be without the evidence; therefore, the evidence was highly probative.
>
> The Supreme Court has noted that MRE 403 does not prohibit prejudicial evidence but only prohibits evidence that is unfairly prejudicial. *Id.* at 198. This unfairness arises if there is a danger that marginally probative evidence will be given undue weight by the jury. *Id.* The evidence at issue here was not marginally probative – it was highly probative.

Defendant contends that having former Detective Ron Wood, Detective Alfred Calhoon, former social worker Ben Kennedy, and Dr. Hernan Gomez testify about Justin was excessive and prejudicial. But these witnesses served different purposes. Wood, as a Kentucky official who attended Justin's autopsy, assisted in authenticating the death certificate and testified about Justin's age and weight and the cause of death listed on the death certificate. Dr. Gomez was qualified as an expert in general medicine and explained that the wording for the cause of death on the death certificate was another way of saying "starvation." He further opined that the death certificate should not have listed Justin's death as "natural." Calhoon testified about defendant's statements regarding Justin and authenticated the recording of her interview that was played for the jury, and we also note that Calhoon's testimony was helpful to the defense in some respects because he admitted that no charges were filed against defendant for Justin's death. Kennedy was a witness called by the defense who primarily testified about the lack, in 2009 and before Justin's death, of a substantiation of abuse regarding defendant.

The prosecutor had a reason for presenting different witnesses to testify about Justin's death,[4] and defense counsel chose to present Kennedy as a witness. In light of this situation, and in light of the extremely probative nature of the evidence, the mere fact of there being multiple witnesses who testified about Justin does not equate to a situation of unfair prejudice. In addition, the trial court gave a cautionary instruction at the close of testimony. The court's instruction lessened any prejudicial effect of the other-acts evidence. *See Cameron*, 291 Mich. App. at 612.

Given all the circumstances, it was well within the range of principled outcomes, *Watkins*, 491 Mich. at 467, for the trial court to conclude that the probative value of the other-acts evidence was not "substantially outweighed" by the danger of unfair prejudice, MRE 403.

---

[4]We note that the three prosecution witnesses identified as problematic by defendant were merely three of 30 witnesses presented by the prosecution during the lengthy trial.

*Lawson,* 2019 WL 2397278 at *1-*2.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, Supreme Court precedent. First, to the extent that Lawson raises this claim as a violation of state law, her claim is not cognizable on federal habeas review. *Shoemaker v. Jones*, 600 F. App'x 979, 984 (6th Cir. 2015). A federal court may grant an application for writ of habeas corpus only on the ground that the petitioner is in custody in violation of the Constitution, laws, or treaties of the United States, and not for perceived errors of state law. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Second, Lawson fails to show a due process violation. The admission of evidence may violate the Due Process Clause (and thereby provide a basis for habeas relief) where the admission "is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (2003). The Supreme Court "defined the category of infractions that violate fundamental fairness very narrowly." *Estelle*, 502 U.S. at 73 (1991). To violate due process, an evidentiary decision must "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552

(6th Cir. 2000) (citation omitted). This standard accords the state courts "wide latitude ... with regard to evidentiary matters under the Due Process Clause." *Id.*

For the reasons discussed by the Michigan Court of Appeals, the challenged evidence was relevant and probative. It directly addressed Lawson's claim and the testimony of several defense witnesses that Dianna's small size was unrelated to Lawson's actions. The challenged testimony tended to show that Dianna's condition was caused by Lawson and that Lawson mistreated her siblings. The "other acts" evidence, while prejudicial, was not unfairly so.

The Court concludes that it was not fundamentally unfair to admit evidence of Lawson's prior conduct toward her brother. Therefore, her right to due process was not violated by admitting the evidence, and she has no right to habeas relief on his claim.

### B. Claim Two: Witness Coercion

In her second claim, Lawson claims that the trial court and prosecutor threatened her daughter, Chelsea Petoskey, with perjury if she testified for the defense. Respondent asserts that this claim is procedurally defaulted because counsel did not object to the trial court's statements to Petoskey. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003)

(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim. The Court notes that AEDPA deference applies to the Michigan Court of Appeals' plain-error analysis of this claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

Before presenting any witnesses, defense counsel raised a concern that inconsistencies between statements Petoskey gave during police interviews and her anticipated testimony might result in a charge of perjury or lying to a law enforcement officer. (ECF No. 8-18, PageID.1498). Outside the presence of the jury, the trial court called Petoskey to the witness stand to inform her about the dangers of perjury. The judge emphasized that he was not advising Petoskey whether to testify and that her mother had a constitutional right to call witnesses in her defense. (*Id*. at 1501-1503.) Petoskey stated that she intended to testify and did not plan to invoke her rights under the Fifth Amendment. (*Id.* at 1505.) Ultimately, however, Petoskey was not called as a witness.

On appeal, the Michigan Court of Appeals denied relief on this claim

11

holding that a witness may properly be informed that providing false testimony could result in a perjury charge, that such a warning does not constitute an attempt to intimidate a witness, and Lawson offered no proof that the trial court's caution caused Petoskey not to testify. *Lawson*, 2019 WL 2397278, at *3.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, Supreme Court precedent. A party's right to present his or her own witnesses in order to establish a defense is a fundamental element of due process. *Washington v. Texas*, 388 U.S. 14, 19 (1967). In *Webb v. Texas,* 409 U.S. 95 (2008), the Supreme Court held that a defendant's right to due process may be violated if a witness who is otherwise willing to testify is coerced into invoking his or her Fifth Amendment prevailed against self incrimination. *Id.* at 97-98. The trial court in *Webb* "gratuitously singled out" the single defense witness for a "lengthy admonition of the dangers of perjury," including advising the witness that if he lied on the stand "he would be prosecuted and probably convicted for perjury." *Id.* at 97-98. No prosecution witnesses were given similar warnings. The witness then refused to testify. The Supreme Court found that the trial judge's remarks "effectively drove that witness off the stand" and violated due process. *Id.* at 98. But "*Webb* ..does not stand for the proposition that merely warning a witness of the consequences of perjury demands reversal." *United States v. Pierce*,

12

62 F.3d 818, 832 (6th Cir.1995).

The judge's remarks in this case were far milder than those in *Webb*. The judge did not threaten to have Petoskey charged with perjury. In contrast to the trial court's admonitions in *Webb*, the judge's remarks in this case were not threatening or intimidating. The judge simply informed Petoskey that if her trial testimony differed from her previous sworn statement she could face a perjury charge. He repeatedly advised her that it was her choice whether to testify and that he did not know what her testimony would be. The court's conduct was not improper. Habeas relief is denied on this claim.

### C. Claim Three: Sentencing Claims

Next, Lawson maintains that her right to due process was violated by the incorrect scoring of offense variables (OV) 3, 7, and 15. She also maintains that her sentence is disproportionate.

"A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only." *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003). And "federal habeas corpus relief does not lie for errors of state law." *Id.* (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). So Petitioner's claim that the trial court erred when it scored OV 3, 7, and 15 is not cognizable on federal habeas review.

Lawson argues that this claim rises to the level of a constitutional violation because the offense variables were scored on the basis of inaccurate information. A sentence based on "extensively and materially false" information which the defendant had no opportunity to correct may state a federal due process violation. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). But Lawson has not established that she was sentenced on the basis of false information.

Lawson identifies only one specific instance when the trial court allegedly relied on inaccurate information – the scoring of OV 3. OV 3 allows for the scoring of 25 points if "[l]ife threatening or permanent incapacitating injury occurred to the victim." Mich. Comp. Laws § 777.33(1)(c). Lawson argues that Dianna's condition amounted to only mild dehydration which was not life threatening. This argument does not, however, establish that the information relied upon by the trial court was false. Ample evidence, including medical testimony that Dianna was "starving to death" and would not have survived without aid, was sufficient to support the scoring of OV 3. *Lawson*, 2019 WL 2397278 at *3. Lawson's disagreement with the basis for scoring of this variable does not render it inaccurate. With respect to OV 7 and OV 10, Lawson fails to identify any false information upon which the court relied. She, therefore, fails to state a claim.

Finally, Lawson's claim that her sentence is disproportionate lacks merit.

"[T]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). Courts reviewing Eighth Amendment proportionality must remain highly deferential to the legislatures in determining the appropriate punishments for crimes. *United States v. Layne*, 324 F.3d 464, 473-74 (6th Cir. 2003) (citing *Harmelin*, 501 U.S. at 999). "In implementing this 'narrow proportionality principle,' the Sixth Circuit has recognized that 'only an extreme disparity between crime and sentence offends the Eighth Amendment.'" *Cowherd v. Million*, 260 F. App'x 781, 785 (6th Cir. 2008) (quoting *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000)). As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining "the type and extent of punishment for convicted defendants." *Williams v. New York*, 337 U.S. 241, 245 (1949).

Lawson's sentence was not grossly disproportionate or excessive and did not exceed the statutory maximum for any of her crimes. *See* Mich. Comp. Laws § 750.349(b) (allowing a sentence of up to 15 years for unlawful imprisonment); Mich. Comp. Laws § 750.145n(1) (allowing sentence of up to 15 years for first-degree abuse of a vulnerable adult); and Mich. Comp. Laws § 750.174a(4)(a)

(allowing sentence of up to five years for embezzlement). The trial court provided ample justification for its upward departure from the sentencing guidelines including the squalid conditions in which Dianna was kept, the length of time the imprisonment occurred, and the deliberative and planned nature of the crimes including Lawson's attempts to evade criminal responsibility. In light of the circumstances of the crimes, the Michigan Court of Appeals reasonably found no Eighth Amendment violation.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court concludes that reasonable jurists would not debate the Court's disposition of the claims raised in this petition. Thus, the Court denies a COA.

## V. Conclusion

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED**.

It is further **ORDERED** that Petitioner is granted leave to proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. See Fed. R. App. P. 24(a).

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

Dated: March 31, 2022